JAMES M. HARRISON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 66193.   Promulgated June 19, 1934.

*Paul L. Holden, Esq.,* for the petitioner.
*Harold Allen, Esq.,* for the respondent.

### OPINION.

MURDOCK: The Commissioner determined a deficiency of $21,019.38 in the petitioner's income tax for the calendar year 1929. In determining the deficiency the Commissioner added to the total income reported $7,520.90, representing dividends which he held were received through revocable trusts. The petitioner assigned this action

as error, and in his brief the Commissioner concedes that the income from these trusts was not taxable to the petitioner. The Commissioner also added to total income as reported "Gain on sale $99,250", which he explained as follows:

Gain on the sale of contracts of James M. Harrison, Inc., to the Ross Industries Corporation has been determined as follows:

Received 1,000 shares of preferred stock of Ross Industries
  Corporation, market value_____ $100,000.00
Less:
  Cost of 150 shares of James M. Harrison, Inc_____    750.00
                                                             _____
                                                             $99,250.00

It is held that proceeds from the sale represent income taxable to you on the liquidation of the corporation James M. Harrison, Inc.

The petitioner assigns this action of the Commissioner as error and contends that under section 112 of the Revenue Act of 1928 the gain from this transaction was not recognized, and, furthermore, that only one fourth of the 1,000 shares was received by and belonged to him.

The facts have been presented by a stipulation which is set forth in full in the companion case to this one, *J. M. Harrison, Inc.*, 30 B.T.A. 455. J. M. Harrison, Inc., (hereinafter referred to as the Harrison Co.) was an Ohio corporation, organized on July 11, 1927, for the purpose of developing a market for drying equipment and processes employed in baking enamel used extensively in the automobile industry and for other drying operations under patents owned by the petitioner. Prior to March 1929 this company had entered into several contracts for the manufacture and sale of this equipment. In the case of *J. M. Harrison, Inc.*, *supra*, we held that these contracts were valuable assets on March 21, 1929, and constituted property as that term is used in the statute. On March 21, 1929, the Harrison Co. transferred these assets to the Ross Industries Corporation of New York (hereinafter referred to as the Ross Co.) in exchange for $100,000 par value of the preferred stock of the latter company. In the case of *J. M. Harrison, Inc.*, *supra*, we held that this transaction constituted a reorganization to which the two corporations were parties, the property was exchanged solely for stock pursuant to a plan of reorganization, and no gain or loss to the Harrison Co. was recognized under section 112 of the Revenue Act of 1928. The Harrison Co. had agreed, as a part of the plan of reorganization, to distribute to its stockholders the shares of preferred stock which it received in exchange for its assets, to wind up its affairs, and to dissolve. On March 20, 1929, there were 150 shares of the Harrison Co. stock outstanding. Gertrude A. Harrison, the wife of the petitioner, owned 20 of these shares, and the petitioner owned the remaining 130 shares. On that day he made

actual and bona fide gifts of 17½ shares to his wife and 37½ shares to each of their two children. Two hundred and fifty shares of preferred stock of the Ross Co., received by the Harrison Co. on March 21, 1929, were distributed in accordance with the plan of reorganization to each of the four stockholders of the Harrison Co. without the surrender by those stockholders of their Harrison Co. stock. Thus the petitioner and his wife each received 250 shares and their two children each received 250 shares. Thereafter, the Harrison Co. had assets of $2,209.24 which it had reserved for taxes and contingencies pending its dissolution. The taxes and contingencies against which these assets were reserved included:

| | |
|---|---:|
| Auditors' fees | $225.00 |
| Attorneys' fees | 1,750.00 |
| Income tax | 477.70 |
| Total | 2,452.70 |

These amounts were paid by the corporation subsequent to March 21, 1929, and on August 24, 1929, the Harrison Co. dissolved. The petitioner filed a joint return for himself and wife for the calendar year 1929 in which he did not report any income from the receipt by him and his wife of 500 shares of the preferred stock of the Ross Co.

The ownership of the shares at the time of the distribution has been settled by agreement of the parties. The only question left for decision is whether the gain realized by the petitioner and his wife from the distribution of the Ross Co. stock is recognized under the Revenue Act of 1928 and, therefore, is taxable to them on their joint return, or whether their gain is not recognized. The Commissioner's whole argument on this point is that the transaction between the two corporations was a sale, not a reorganization within the meaning of section 112 (i) (1) (A), and, therefore, none of the nonrecognition provisions of section 112 would relieve the gain to the shareholders from tax. His argument falls under our decision in *J. M. Harrison, Inc., supra,* that the transaction was a reorganization within the meaning of section 112 (i) (1) (A). He has not argued that the petitioner would be taxable if there was a reorganization within the meaning of the statute. The petitioner contends that his gain and that of his wife is not recognized because of the provisions of sections 112 (g) and 112 (b) (3) of the Revenue Act of 1928. He does not care which provision is applied so long as the gain is not recognized. The stipulated facts in this case and the conclusion reached by the Board in the companion case of *J. M. Harrison, Inc., supra,* bring the distributions to this petitioner and his wife squarely within the letter of the provisions

of section 112 (g) of the Revenue Act of 1928. Those provisions are as follows:

(g) *Distribution of stock on reorganization.*—If there is distributed, in pursuance of a plan of reorganization, to a shareholder in a corporation a party to the reorganization, stock or securities in such corporation or in another corporation a party to the reorganization, without the surrender by such shareholder of stock or securities in such a corporation, no gain to the distributee from the receipt of such stock or securities shall be recognized.

There was distributed, in pursuance of a plan of reorganization, to the petitioner and his wife, shareholders in a corporation a party to the reorganization, stock in another corporation a party to the reorganization, without the surrender by these shareholders of their certificates of stock in the first corporation. The provision, on its face at least, seems to provide that under such circumstances no gain to these shareholders shall be recognized from the receipt of the Ross Co. stock. Cf. *Rudolph Boehringer*, 29 B.T.A. 8.

It is suggested, however, that this transaction does not come within the spirit and intent of section 112 (g) and the gain is taxable just as any other gain from the liquidation of a corporation. The alleged justification for this view is that the failure to surrender the Harrison Co. stock was a mere empty gesture, lacking in substance, and done merely for the purpose of avoiding tax by bringing within the letter of section 112 (g) a gain from a distribution which Congress did not intend should go unrecognized. The plan of reorganization involved the prompt dissolution of the Harrison Co. and the argument is made that this dissolution could have taken place simultaneously with the distribution of the Ross Co. stock and that the continuance of the Harrison Co. for a short time and the retention by its stockholders of their interest in this corporation for that short time were circumstances which lack substance and should be disregarded in the decision of this case. We are unable to say, however, that these circumstances were wholly lacking in substance. They were not done to avoid tax, but had some other purpose.

The statutory provision contained in section 112 (g) of the Revenue Act of 1928 was originally enacted as section 203 (c) of the Revenue Act of 1924. The explanation of its purpose given in the Committee Reports might indicate that it was never intended to cover a reorganization involving the dissolution of the original company. See House Report 179, 68th Cong., 1st sess., p. 14; Senate Report No. 398, 68th Cong., 1st sess., p. 15. If the word "stock" in this section were interpreted as meaning a shareholder's actual interest in a corporation, instead of the mere paper evidence of that interest, the provision might be held inapplicable where no real

interest is retained in the original corporation. However, the words used in the statute are the primary source from which the intention of the legislators should be determined, and unless the meaning of those words is doubtful or ambiguous, resort may not be had to other sources to determine intent. The words used in section 112 (g) are reasonably clear and seem to cover the present case. Cf. *Burnet* v. *Brooks*, 288 U.S. 378, 391. But in any event, the question does not have to be decided in this case and may never require a decision in any case. The point was neither raised by the Commissioner nor briefed by the parties. No matter which way it would be decided, the final decision in this case would be the same. The reason for this is that the application of section 112 (g) could only be avoided by holding that in substance the Harrison stockholders exchanged their interest in that company solely for an interest in the Ross Co., and that holding would bring the transaction within the scope and intent of section 112 (b)(3), which provides that no gain or loss shall be recognized where stock of one corporation a party to a reorganization is exchanged solely for stock of another corporation a party to a reorganization. *Winston Bros. Co.*, 29 B.T.A. 905. This seems to demonstrate at least that this transaction comes within the spirit and intent of the nonrecognition provisions of section 112. In form it comes within section 112 (g) and the argument which would take it out of that section would necessarily place it within section 112 (b)(3). Therefore we decide this point for the petitioner.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

ADAMS, dissenting: I am unable to agree with the conclusion reached in the prevailing opinion. I believe that J. M. Harrison, the petitioner, received stock of the Ross Industries Corporation in liquidation of his stock in J. M. Harrison, Inc., and that under the circumstances the transaction is one in which gain or loss must be recognized in so far as this petitioner is concerned.

We held in *J. M. Harrison, Inc.*, 30 B.T.A. 455, that under the facts presented there was a statutory reorganization between J. M. Harrison, Inc., and the Ross Industries Corporation. That holding is not controlling here, we having before us in that case the two corporations; here, an individual stockholder of one of them. Petitioner contends in his brief that gain to him in this transaction cannot be recognized by reason of section 112 (g) of the Revenue Act of 1928, and he says in the alternative that if this section of the statute does not exempt him from taxation, then section 112 (b)(3) applies.

I am of the opinion that the facts here do not bring this case within the meaning of provisions of section 112 (g).

The plan of reorganization as proposed and carried out by the parties included the transfer of the Ross Co. stock to the Harrison Co. in exchange for substantially all of its assets and the dissolution of the Harrison Co. It is immaterial that the stockholders of the Harrison Co. did not surrender their certificates of stock immediately upon the receipt of the Ross Co. stock distributed to them. The Ross Co. stock was distributed in complete liquidation of the Harrison Co., and with this distribution the Ross Co. had nothing to do. Under this state of facts, it becomes immaterial whether the mere physical process of surrender and cancellation of the certificates of stock is accomplished. The mere retention of stock in a dissolved corporation that has been completely liquidated means nothing. It is of no value. A distribution in complete liquidation necessarily has the effect of rendering the certificate of stock valueless, and, in such case, we think it must be regarded as having been surrendered within the meaning of section 112 (g) of the statute. That section allows an exception to a transaction which, without such exception, would give rise to gain or loss under the statute. In order to avail himself of the benefit of that statute, petitioner must bring himself clearly within its intendment. This we think the facts of this case fail to do. To say that petitioner comes within the exception of that paragraph of the statute would be to recognize the shadow while the substance escapes our attention.

I think the distribution here results in a transaction from which gain or loss to the petitioner must be recognized in the amount of the difference between the cost of the Harrison Co. stock and the fair market value of the Ross Co. stock distributed to him in liquidation and dissolution of the Harrison Co.

Section 112 (b) (3) applies only where stock or securities in a corporation a party to a reorganization are, *in pursuance of a plan of reorganization*, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization. Here, there was no exchange of stock between the Ross Co. and the Harrison Co. It was not contemplated in the plan of reorganization that the Ross Co. should exchange its stock or securities for stock or securities in the Harrison Co., and it would appear that the Ross Co. deliberately refrained from taking the Harrison Co. stock.

The prevailing opinion says:

\* \* \* In the case of *J. M. Harrison, Inc.*, we held that this transaction constituted a reorganization to which *the two corporations were parties*, the property was exchanged solely for stock *pursuant to a plan of reorganization*, and no gain or loss to the Harrison Co. was recognized under section 112 of the Revenue Act of 1928. The Harrison Co. had agreed, as a part of *the plan of reor-*

*ganization,* to distribute to its stockholders the shares of preferred stock which it received in exchange for its assets, to wind up its affairs and to dissolve. * * * [Italics supplied.]

I do not believe that the opinion in the case quoted justifies this statement. It, as I understand it, was not held there that *the plan of reorganization* included a provision that the stock received by the Harrison Co. was to be distributed to its stockholders. An inspection of the record together with the opinion in that case, I think, will demonstrate that this statement is erroneous. The record shows that on March 15, 1929, at a meeting of the board of directors of the Harrison Co. the following resolution was adopted:

In view of the fact that this company will receive from Ross Industries Corporation, in pursuance of the plan of reorganization, stock in Ross Industries Corporation, the following resolution was on motion duly made, seconded, put and unanimously carried, adopted:

RESOLVED: That in event the merger of this company with Ross Industries Corporation is completed, along the lines authorized in the foregoing resolution, such stock of Ross Industries Corporation as may be received by this company, in effectuating the said merger, shall as soon after the transaction is completed as is convenient, be distributed among the various stockholders of this company, in proportion to the stockholdings of each stockholder.

The reorganization was accomplished by a contract entered into by and between the Ross Co. and the Harrison Co., the agreement being dated March 21, 1929, and executed by the officers of the two corporations on that date. This agreement, being Exhibit H, a part of the stipulation of fact in this case, is made a part hereof by reference. It provides for the transfer of part of the assets of the Harrison Co. to the Ross Co. in consideration of the issuance to the Harrison Co. of $100,000 par value of 7 percent preferred stock of the Ross Co. It further provides that the Harrison Co. will dissolve not later than six months from and after March 21, 1929. There is no reference to or agreement about what disposition shall be made of the Ross Co. stock which is to be transferred to the Harrison Co. by the Ross Co. The resolution of March 15, 1929, passed by the directors of the Harrison Co. was not made a part of that contract and was not referred to by it. There is no circumstance indicating that the Ross Co. had any knowledge of such resolution. What disposition was to be made of this stock by the Harrison Co. was not the subject of contract or agreement between the two corporations. The resolution of March 15 relative to the distribution of such stock, if and when it should be received, was purely a matter of concern to the Harrison Co. and its stockholders. It was not a part of the plan of reorganization and the reorganization was not effected with relation to what disposition the Harrison Co. would make of such stock.

The prevailing opinion states that the respondent here has not argued that the petitioner would be taxable if there was a reorganization of the two corporations within the meaning of the statute. I understand it to be the duty of this Board to redetermine proposed deficiencies by the Commissioner of Internal Revenue where the same are properly brought before us and I do not understand that we are limited in that determination to the questions either of law or fact raised or relied upon by either of the parties; nor are we to be controlled in our determination by the construction placed upon the law by either of the parties. If the record before us presents a question which we believe should be controlling, I believe it to be our province to deal with that question where properly raised by the pleadings whether it is insisted upon or not.

I do not believe that the Ross Co. stock was distributed to petitioner in pursuance of the plan of reorganization between the two corporations.

It is said in the prevailing opinion that the things done by petitioner and the corporations were not done to avoid tax, but had some other purpose. I think this statement is at most *dictum*. The prevailing opinion cites *Winston Bros. Co.*, 29 B.T.A. 905. I think that case is distinguishable from this in that there we had before us one of two corporations. Here we do not have the corporation, but an individual stockholder.

Entertaining these views, I feel the determination of the Commissioner as to the receipt of the Ross Co. stock by the petitioner should be sustained.